# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CASE NO: 14-cv-02775
SECTION "J"  (2)

| | |
|---|---|
| **JASON CASE, on behalf of himself and those similarly situated,** | CASE NO: 2:14-cv-02775-CJB-JCW |
| **Plaintiff,** | |
| vs. | Judge Carl Barbier |
| | Magistrate Judge Joseph C. Wilkinson |
| **DANOS AND CUROLE MARINE CONTRACTORS, L.L.C., a Louisiana Limited Liability Company,** | |
| **Defendant.** | |
| _____/ | |
| **LISA BRAGG, on behalf of herself and those similarly situated,** | CASE NO: 2:14-cv-02976-CJB-JCW |
| **Plaintiff,** | |
| vs. | Judge Carl Barbier |
| | Magistrate Judge Joseph C. Wilkinson |
| **DANOS AND CUROLE MARINE CONTRACTORS, L.L.C., a Louisiana Limited Liability Company,** | |
| **Defendant.** | |
| _____/ | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CERTIFICATION OF COLLECTIVE ACTION

Plaintiff, JASON CASE, files this Memorandum in Support of his Motion for Certification of Collective Action and as grounds thereof state:

2

# INTRODUCTION

1. Section 16(b) of the Fair Labor Standards Act of 1938 ("FLSA") provides, among other things, that an action to recover unpaid minimum wages or unpaid overtime compensation may be maintained against any employer in any federal or state court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. *See*, 29 U.S.C. § 216(b).

2. As stated in Plaintiff's Complaint, Plaintiff was a non-exempt (day-rate paid) Vessel Inspector employed by Defendant and is authorized by the FLSA to sue in his own name on behalf of himself and other employees similarly situated.

3. Plaintiff's claim is typical of the claims of other former and current similarly situated Vessel Inspectors employed by Defendant and typical of the claims of all members of the representative class described below.  *See* Declarations of Jason Case ("Case Decl."), Andrew Cambre ("Cambre Decl."), and Murry Steven Perrigin (Perrigin Decl.") attached as **EXHIBITS D**, **E** and **F** respectively.

4. As stated above, the representative class consists of all current and former Vessel Inspectors who worked for Defendant at any time within the last three (3) years, who worked more than forty (40) hours in one or more workweeks, and who were subjected to Defendant's illegal practice of not paying full and proper time and one half overtime compensation for all overtime hours worked. As a result of such unlawful compensation practices, each Vessel Inspector did not receive full and proper payment of time and one half of their regular rate of pay for all hours worked over 40 in one or more workweeks for Defendant. The named Plaintiff, as well as **two (2)** additional "opt-in Plaintiffs," have filed Declarations in support of this Motion.

Moreover, Plaintiff anticipates filing numerous additional consent forms for other "similarly situated" employees who likewise wish to join this lawsuit, once they learn of the lawsuit.

5. Simply put, all other Vessel Inspectors are owed full and proper payment of overtime wages and the right to participate in this litigation. Defendant has acted or refused to act on common grounds applicable to Vessel Inspectors thereby making the identical relief appropriate with respect to their current and former Vessel Inspectors as a whole. Moreover, the common questions of law and fact predominate over any questions affecting only Plaintiff, and a collective action is superior to other available methods for the fair and equitable adjudication of the controversies between the representatives described above and the named Defendant. And, although the class of current and former Vessel Inspectors is identified and certain, the individual members of the class cannot be completely identified and notified of their right to join this action absent access to Defendant's records.

WHEREFORE, Plaintiff, JASON CASE, respectfully requests that the Court permit and supervise notice to all current and former day-rate paid Vessel Inspector employees who were subjected to Defendant's illegal pay practice of failing to pay full and proper time and one half overtime compensation for all hours worked in excess of forty 40 in a workweek during his/her employment with Defendant.

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. 29 U.S.C. § 216(b). The FLSA provides, in part, that:

> An action to recover the liability [for unpaid overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other

>similarly situated. ***No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.***

*See id.* (emphasis added).

Defendant, DANOS AND CUROLE MARINE CONTRACTORS, L.L.C. ("DANOS" or "Defendant"), provides construction, fabrication, production workforce, consultants, coatings services, logistics and environmental services on a contract basis to its oil and gas operator clients. *See* Danos Brochure, attached as **EXHIBIT G**. Following the B.P. oil spill, Defendant contracted with B.P. to provide certain employees who assisted with B.P.'s clean-up efforts. *See* Case Decl., ¶ 4; *see also* Cambre Decl., ¶ 4; Perrigin Decl., ¶ 4. Among the various types of employees Defendant employed to service B.P. during the oil spill clean-up were Vessel Inspectors. Plaintiff and those similarly situated to him who have joined, and wish to join this action, are such Vessel Inspectors.

Plaintiff is a former day-rate paid Vessel Inspector who was not paid overtime wages for each hour he worked over 40 during a workweek while employed with Defendant, to work on the site of the B.P. oil spill. *See* Case Decl.., ¶¶ 4, 14. Specifically, Plaintiff alleges that despite its knowledge that Plaintiff and its other Vessel Inspector employees were regularly working far in excess of 40 hours per week, DANOS failed to pay Plaintiff and its other similarly situated Vessel Inspectors proper overtime as required by the FLSA. *Id.*, ¶ 15-19. This practice, he alleges, violated the overtime provisions of the Fair Labor Standards Act. *Id.* As a result of these alleged practices, Plaintiff was unlawfully deprived of proper overtime compensation due to him under the FLSA. *Id.*

During their employment with Defendant, Plaintiff, and other similarly situated Vessel Inspectors, regularly worked in excess of 40 hours per workweek. *Id.; see also* Cambre Decl.,

¶15-19; Perrigin Decl., ¶¶ 15-19.  Notwithstanding the actual overtime hours worked by Plaintiff and other similarly situated Vessel Inspectors, Defendant did not pay overtime compensation for all overtime hours worked in excess of 40 within a workweek to the class of Vessel Inspectors. *Id*.  Instead, Defendant paid its Vessel Inspectors, including Plaintiff solely their day-rates for each day worked.  *Id*.  As such, Defendant failed to pay Plaintiffs for all hours worked over 40 per week in one or more workweeks. *Id.*

Based upon Defendant's unlawful policy of failing to pay its Plaintiffs overtime, Plaintiff seeks this Court's authorization to facilitate notice to each of Defendant's Vessel Inspectors who worked for Defendant within the last three years. Plaintiff further requests that he be permitted to give such notice as approved by this Court to all such class members of their rights to opt-in to this litigation by executing an appropriate consent as required by Section 216(b) of the FLSA. Plaintiff's Declaration and the Declarations of the additional Opt-In Plaintiffs who have joined this action since the time it was filed attest that Defendant's other Vessel Inspectors had similar duties, were paid in a similar manner (i.e., paid a day-rate, worked similar hours, and subjected to Defendant's common policy under which it failed to pay Plaintiffs proper overtime premiums for all hours worked over 40 per week in one or more workweeks), and thus, were subjected to working overtime hours without being compensated for same.  *See* Exhibits D through F.

## II.   APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS

### A.   The Two-Tiered Approach

FLSA Rule 216(b) collective actions operate much differently than typical class action suits under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to a similarly situated class of plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case.

6

Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id.* This is just the exact opposite of traditional Rule 23 class actions in which a Plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

In *Hoffman-La Roche, Inc. v. Sperling*, 492 U.S. 165 (1989), the Court ruled that not only did trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential plaintiffs. *See id.* There, the Court addressed the issue of whether the district court may play any role on prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought. *See id.* The Court determined that district courts have discretion in appropriate cases to implement 29 U.S.C. §216(b), by facilitating notice to potential plaintiffs. *See id* at 486. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *See id.*

Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute. Thus, it lies within the discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time. *Id.* Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. *Id.*, at 487. Additionally, the benefits of the class action provisions of 29 U.S.C. §216(b), "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id.* at 486.

Although the Fifth Circuit has never endorsed an approach to evaluating motions for

conditional certification, this Court has previously endorsed a **two-tiered approach** to certification of an opt-in class pursuant to 29 U.S.C. § 216(b). *See Donohue v. Francis Services, Inc.*, 2004 WL 1161366, at *1 (E.D. La. May 24, 2004) (Barbier, J.), citing *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1212 (5th Cir.1995) (acknowledging that the two-tiered approach utilized under the ADEA for notice may likewise be applicable to FLSA collective actions) *overruled on other grounds, Desert Palace v. Costa*, 539 U.S. 90 (2003). This Court has been joined by virtually all of district courts within this district, who have similarly adopted this two-tiered approach. *See, e.g., Crowley v. Paint & Body Experts of Slidell, Inc.,* No. 14–172, 2014 WL 2506519, at *5 (E.D. La. June 3, 2014) (Brown, J.); *Skelton v. Sukhothai, LLC,* 994 F.Supp.2d 785, 787 (E.D. La. 2014) (Berrigan, J.); *White v. Integrated Elec. Techs., Inc.,* No. 11–2186, 2013 WL 2903070, at *3 (E.D. La. June 13, 2013) (Morgan, J.); *Baricuatro v. Indus. Personnel & Mgmt. Servs., Inc.,* No. 11–2777, 2012 WL 5472302, at *1 (E.D. La. Nov. 9, 2012) (Engelhardt, J.); *Lackey v. SDT Waste & Debris Servs., L.L.C.,* No. 11–1087, 2011 WL 6329909, at *2 (E.D. La. Dec. 19, 2011) (Milazzo, J.); *Lang v. DirecTV, Inc.,* 735 F.Supp.2d 421, 434–36 (E.D. La. 2010) (Vance, C.J.); *Kuperman v. ICF Int'l,* No. 08–565, 2008 WL 4809167, at *5 (E.D. La. Nov. 3, 2008) (Barbier, J.); *Xavier v. Belfor USA Grp., Inc.,* 585 F.Supp.2d 873, 876 (E.D. La.2008) (Zainey, J.); *Melson v. Directech Southwest, Inc.,* No. 07–1087, 2008 WL 2598988, at *3 (E.D. La. June 25, 2008) (Feldman, J.); *Lima v. Int'l Catastrophe Solutions, Inc.,* 493 F.Supp.2d 793, 797 (E.D. La. 2007) (Fallon, J.); *Williams v. Bally's La., Inc.,* No. 05–5020, 2006 WL 1235904, at *2 (E.D. La. May 5, 2006) (Africk, J .).

Under this two-tiered approach, the court makes an initial determination, based solely upon the pleadings and any declarations, whether notice of the action should be given to potential class members. *See Mooney,* 54 F.3d at 1212-1213. Because the court has minimal

evidence at this stage of the proceedings, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. *See id.* Indeed, at the notice stage, "***courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan…***" *See id.* at 1214, n.8 (emphasis added). Therefore, "conditional certification" is typically granted and putative class members are provided notice and opportunity to opt-in. The case then proceeds as a collective action through discovery. *Mooney* at 1214.

As this Court recently reiterated, "[t]his Court uses the following standards to determine whether to conditionally certify a class:"

> To certify a collective action under the … **FLSA**, … two requirements must be met. First, the named representatives and the putative members of the prospective **FLSA** class must be similarly situated…. Second, the action at issue must have a general effect…. A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice…. To resolve the question whether putative collective action members are similarly situated, courts may employ a two-step analysis for conditional certification as established by the Fifth Circuit in *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213–14 (5th Cir.1995). First, at the so-called "notice stage," the district court decides whether notice of the action should be given to potential class members…. This decision is usually based only on the pleadings and any affidavits which have been submitted…. It is made applying a fairly lenient standard, and usually results in "conditional certification" of a representative class…. At the notice stage, courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan ……. Following conditional certification, putative class members are given notice and the opportunity to opt in to the collective action…. The case then proceeds throughout discovery as a collective action…. A second step takes place later on, when and if the defendant files a motion for decertification, after more extensive discovery has taken place.

*Perez v. City of New Orleans*, 2014 WL 1365955, at *1 (E.D. La. April 7, 2014) (Barbier, J.), quoting *Donohue, supra*.

A court may deny conditional certification and notice "if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 507 (M.D. La. 2005). However, the court "need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." *Wellman v. Grand Isle Shipyard, Inc.*, 2014 WL 5810529, at *4 (E.D. La. Nov. 7, 2014), quoting *Maynor v. Dow Chemical Co.*, 2008 WL 2220394, at *7 (S.D. Tex. May 28, 2008). The remedial nature of the FLSA and § 216 "militate strongly in favor of allowing cases to proceed collectively." *Roussell v. Brinker Intern., Inc.*, No. H-05-3733, 2008 WL 2714079, at *24 (S.D. Tex. July 9, 2008).

In the instant case, there are questions of law or fact common to Defendant's day-rate paid Vessel Inspectors and the claims of the named Plaintiff in the instant matter. Indeed, Plaintiff's claims are typical of the claims of the other individuals in their positions. For purposes of defining the "similarly situated class" pursuant to 29 U.S.C. § 216(b), Plaintiff need only demonstrate that the defined class is comprised of representatives who are similarly situated to Plaintiff with regard to Defendant's payroll practices and record keeping requirements. *See* 29 U.S.C. § 216(b). This determination is based solely on the pleadings and affidavits and the standard is a lenient one typically resulting in conditional certification of a representative class to whom notice is sent and who receive an opportunity to "opt in." *Mooney*, at 1214. The lenient standard requires only substantial allegations that potential members "were together the victims of a single decision, policy, or plan...." *Id.* at n. 8 (*citing Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J.1988)). A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons exists. *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798 (E.D. La. 2007).

Based upon the Declarations, and the detailed allegations in the Complaint, Plaintiff has more than satisfied his burden to facilitate notice. Here, Defendant employed dozens of Vessel Inspectors that are similarly situated. During different times over the last three years, each of these Vessel Inspectors worked for DANOS. *See generally* Exhibits D through F. These Vessel Inspectors were paid day-rates and regularly worked more than 40 hours per work week. *See id.,* generally. Notwithstanding the overtime hours worked by Plaintiff and other similarly situated Vessel Inspectors, Defendant failed to pay Plaintiff, and these similarly situated individuals, any compensation for the time that they regularly attended these meetings. *Id*. As a result of this practice, Defendant regularly failed to pay its Vessel Inspectors proper overtime compensation owed and Plaintiff's motion should be granted.

### B. Numerous Courts, Including this Court, Have Conditionally Certified Collective Actions in Similar Cases

This is not a case of first impression. Rather, this Court and many others have previously conditionally certified nearly classes regarding allegations nearly identical to those alleged here. *See Prejean v. O'Brien's Response Management, Inc*., 2013 WL 5960674, at *2 (E.D. La. Nov. 6, 2013) (Barbier, J.) (conditionally certifying class of oil spill response workers paid day-rates, who alleged they were not paid overtime when they worked over 40 hours per week); *Akins v. Worley Catastrophe Response, LLC*, 2013 WL 1412371, at *6 (E.D. La. Apr. 8, 2013) ("Plaintiffs' evidence shows that all evaluators were required to work 10– to 12–hour days for more than five days each week and were paid a fixed daily rate, without any guarantee and without receiving any overtime pay. They have established the minimum requirements for a pay policy or practice that was generally applicable to all potential collective action members."); *Wilson v. Atlas Oilfield Const. Co., LLC*, 2014 WL 4546954 (W.D. Tex. Sept. 12, 2014)

(conditionally certifying class of compressor mechanics paid solely day-rates without overtime); *Sandel v. Fairfield Industries, Inc.*, 2014 WL 1379902 (S.D. Tex. Apr. 8, 2014) (same).

Importantly, the declarations of Plaintiff Case and Opt-In Plaintiffs Cambre and Perrigin, provide additional evidence the job duties of Vessel Inspectors are substantially similar and have been subject to the same exact companywide policy of failure to pay proper overtime. *See* Exhibits D through F, ¶¶ 4-21; Plaintiffs all worked as day-rate paid Vessel Inspectors. *See* Exhibits D through F, at ¶¶ 4, 15. All of these individuals stated they: (1) were paid solely day-rates, (2) performed substantially similar duties to one another, (3) worked more than 40 hours per week, and (4) were not paid overtime in virtually any week during their employment. *See generally* Exhibits D through F.

In sum, Plaintiff has submitted substantial evidence in support of its Motion. Based upon a review of the declarations from the named Plaintiff and several other opt-in Plaintiffs, specific facts based on personal observation have been provided to support their belief that other employees are interested in opting in. In addition, allowing class notification to potential class members will avoid multiple lawsuits where numerous employees have allegedly been harmed by the same violation. *See, Hoffman-LaRoche*, 493 U.S. at 470 ("The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.").

### III.  FACTORS IRRELEVANT TO THE COURT'S CONSIDERATION AT STAGE I

#### A. The "Merits" of Plaintiff's Claim Are Not Considered When Determining Whether to Grant Notice

Plaintiff anticipates Defendant will contend that notice should not proceed based upon the only possible defense it may have to this action - that Plaintiff and his co-employees are somehow exempt or do not qualify for overtime requirements of the FLSA. Although Plaintiff

believes this defense will ultimately fail based upon the facts that will emerge during discovery, such an argument regarding the factual nature of Plaintiff's claims and Defendant's defenses thereto are irrelevant at this stage of the notification process. At this "conditional certification" stage, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated." *Mooney,* 54 F.3d at 1214 (Recognizing that at the *second* stage of the analysis, or the opt-in or merits stage, with more information, the court can then make a factual determination on the similarly situated question, and decide whether to allow the representative action to proceed to trial or to decertify the class and dismiss, without prejudice, the opt-in plaintiffs). At this "conditional certification" stage, courts *do not weigh the merits* of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated." *See Kreher v. City of Atlanta,* 2006 WL 7398272, at *4 (N.D. Ga. Mar. 20, 2006) (*citing Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of [the conditional certification] inquiry is not whether there has been an actual violation of law, but rather on whether the proposed plaintiffs are "similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated); *See also Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 91, 96 (S.D.N.Y. 2003) ("Once the Plaintiff makes a colorable claim for relief, the <u>only</u> inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff . . .."); *see also Leuthold v. Destination America,* 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class."); *Goldman v. Radioshack Corp.,* 2003 WL 21250571, at *8 (E.D. Pa. 2003) ("A fact-specific inquiry is conducted only *after* discovery and a formal motion to decertify the class is

brought by the defendant."); *Felix De Asencio v. Tyson Foods, Inc.,* 130 F.Supp.2d 660, 663 (E.D. Pa. 2001) ("While this information [submitted by Defendant] may play a more significant role after discovery and during an analysis of the second and final similarly situated tier, Plaintiffs have advanced sufficient evidence to meet their low burden at this first tier of the similarly situated question."). Thus, setting Defendant's anticipated factual/legal arguments aside for purposes of the instant Motion, Plaintiff has easily exceeded his "lenient" burden of proof on the "similarly situated" prong.

## B. **Courts Do Not Consider Discovery During the Conditional Certification Stage**

It has been consistently recognized that discovery at the first notice stage is unnecessary for the similarly situated determination. *See Ryan, Maynor, supra.* An examination of discovery is not appropriate because at this stage the Court is not making a *factual determination* regarding whether the putative class members are "similarly situated" question. *See Valcho, Ryan, supra; see also, Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court will examine the individual plaintiffs' disparate factual and employment setting, as well as various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery."); *Goldman v. Radioshack Corp.,* 2003 WL 21250571, at *8 (E.D. Pa. 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant.").

Moreover, discovery is not necessary because courts at this stage do not resolve factual disputes or make credibility determinations. *See Casanova v. Gold's Texas Holdings Group, Inc.,* 2014 WL 6606573, at *2 (W.D. Tex. Nov. 19, 2014) ("During the notice stage, 'courts do not review the underlying merits of the action in determining whether to conditionally certify.'") (quoting *Walker v. Honghua Am., LLC,* 870 F.Supp.2d 462, 465–66 (S.D. Tex. 2012)); *Scott v.*

14

*Heartland Home Finance,* 2006 WL 1209813, at *3 (N. D. Ga. 2006); *Camper v. Home Quality Mgmt., Inc.,* 200 F.R.D. 516, 520 (D. Md. 2000) ("Factual disputes do not negate the appropriateness of court facilitated notice."). In *Scott,* the court held that it was not appropriate for the court to address the merits of plaintiffs' claims or weigh evidence and thus refused to consider the Defendant's arguments regarding the variation in specific job duties, locations, working hours, or the availability of various exemptions. *See Scott,* 2006 WL 1209813, at *3 (factual matters regarding the applicability of exemptions to employees not appropriate at notice stage); *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000) ("[V]ariations in the plaintiffs' duties, job locations and hourly billing rates do not differentiate the collective class to the extent that it defeats the primary objectives of a section 216(b) action.").

## IV. THE CLASS NOTICE IS ACCURATE, AND SHOULD BE MAILED, E-MAILED

### A. Notice Should Be Sent Via First-Class Mail and Email.

Plaintiff's proposed judicial notice is "timely, accurate, and informative." *See Hoffmann-La Roche,* 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted. To that end, Plaintiff requests that he be permitted to email the class notice to all Vessel Inspectors within the defined class, in addition to mailing same via first-class mail. Email notice serves to further the broad remedial purpose of the FLSA and thus has widely been adopted by courts throughout the country, including this one. *See Prejean*, 2013 WL 5960674, at *10 ("I find that production of e-mail addresses is not significantly more invasive of class members' privacy than is production of their home addresses and that notice by both e-mail and first-class mail is both routine and reasonably calculated to accomplish the broad remedial goals of the notice provision of the FLSA."); *Palma v. MetroPCS Wireless, Inc.*, 2014 WL 235478, at

*2 (M.D. Fla. Jan. 22, 2014) ("After due consideration, the Court determines that it is appropriate to send notice to the class via first class mail as well as via email. A number of courts have determined that email is an inexpensive and appropriate means of delivering notice of an action to a class.") (collecting cases); *Lewis v. Huntington Nat. Bank*, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011) ("The addresses on file for [former employees] may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least one copy of the Notice Package."); *In re Deloitte & Touche, LLP Overtime Litig.,* 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (noting that "communication through email is [now] the norm.").

### B. A Reminder Notice is Appropriate.

Similar to the email transmission of the Notice, a reminder notice postcard is appropriate as well. Thus, Plaintiffs request that they be permitted to transmit a reminder notice postcard to the putative class at the half-way point in the Notice Period. Indeed, courts have repeatedly permitted such a reminder notice, because it ensures that putative class members are aware of their rights and the time within which to exercise same. *See Brown v. Discrete Wireless, Inc.*, 2014 WL 6607006, at *3 (M.D. Fla. Nov. 19, 2014) (approving reminder notice via email); *Collado v. J. & G. Transport, Inc.*, 2014 WL 5390569, at *6 (S.D. Fla. Oct. 23, 2014) ("This request will ensure that putative class members are aware of their rights and the time within which to exercise those rights."); *Kidd v. Mathis Tire and Auto Service, Inc.*, 2014 WL 4923004, at *3 (W.D. Tenn. Sept. 18, 2014) ("In order for the FLSA to serve its remedial function, putative class members must actually become aware of their right to opt in. Although it may be inappropriate for the Court to sanction notice that actually functions to encourage recipients to join a law suit, that is not the apparent function of the Reminder Notice. As such, the Court finds

that the Reminder Notice functions primarily to inform putative class members of their rights."); *Hargrove v. Ryla Teleservices, Inc.,* 2012 WL 463442, at *1 (E.D. Va. Feb. 13, 2012) (authorizing plaintiffs' counsel to send a reminder letter to putative class members if responses were not received by plaintiffs within thirty days from the issuance of the original notice."); *Gee v. Suntrust Mortg., Inc.,* 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) ("Plaintiffs' counsel may mail a reminder notice forty-five days after issuance of the first notice."); *Harris v. Vector Marketing Corp.,* 716 F.Supp.2d 835, 847(N.D. Cal. 2010) ("Particularly since the FLSA requires an opt-in procedure, the sending of a [reminder] postcard is appropriate."); *Vasquez v. Coast Valley Roofing, Inc*., 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) (ordering third-party administrator to send reminder notice, because, "[t]hese procedures provide the best possible notice to the Class Members.").

In light of the FLSA's remedial purposes and the many cases explicitly approving a reminder notice, this Court should permit Plaintiff to send the putative class a reminder notice to ensure they are aware of their rights and the applicable deadlines within which to exercise them.

V.     **NOTICE SHOULD BE SENT TO CLASS MEMBERS WITHIN A THREE-YEAR STATUTE OF LIMITATIONS**

Notice within a three-year statute of limitations period is appropriate in this case. The FLSA allows Plaintiffs to collect damages within a three-year statute of limitations if they can show that Defendant's violation of the FLSA was "willful" – meaning the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Whether Defendant's violations of the FLSA were willful is an issue going to the merits of the case and not whether notice should be issued to potential claimants. *See Villatoro v. Kim Son Restaurant, L.P.,* 286 F.Supp.2d 807, 811 (S.D.Tex.2003). The facts concerning willfulness must be elicited during discovery, and

Defendant may challenge the three-year statute of limitations again at an appropriate time. Thus, notice should go to all individuals who were employed by Defendant during the three-year period preceding the Court's ruling on the instant Motion. *See Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937 (W.D. Ark. 2007).

VI. **THIS COURT SHOULD ORDER DEFENDANT TO PROVIDE CONTACT INFORMATION FOR THE CLASS MEMBERS IN ORDER TO CARRY OUT NOTICE**

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. *Morden v. T-Mobile USA, Inc.,* 2006 WL 1727987, at *3 (W.D.Wash. June 22, 2006) (compelling the defendant to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional class certification motion was pending before the court). "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt in to the action." *Id.* As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. *See, e.g., Hoffmann-La Roche,* 493 U.S. at 165; *see also Anglada v. Linens 'N Things, Inc.,* 2007 WL 1552511, at *7 (S.D.N.Y. May 29, 2007); *Henry v. Quicken Loans, Inc.,* 2006 WL 2811291, at *7 (E.D. Mich. Sept. 28, 2006); *Gieseke v. First Horizon Home Loan Corp.,* 408 F. Supp. 2d 1164, 1169 (D. Kan. Jan. 10, 2006); *Dietrich v. Liberty Square,* 230 F.R.D. 574, 581 (N.D. Iowa 2005). Thus, if this Court grants Plaintiffs' Motion, the Court should likewise order Defendant to provide Plaintiffs with a list of all putative class members' names, addresses, phone numbers, the last 4 digits of class members' social security numbers,[1] and e-mail addresses to carry out notice.

---

1 Social Security numbers are needed to run the names and addresses provided through the National Change of Address database to ensure the most up to date, accurate addresses. Plaintiff and his counsel are agreeable to any reasonable protection of the social security numbers, such as a confidentiality order or an order from this Court to destroy the social security numbers after being used in the change of address database. *See In re Wells Fargo Wage and Hour*

**VII.   CONCLUSION**

A primary reason for conditionally certifying an FLSA collective action is to ensure the joining of the other parties occurs in an "orderly, sensible, ….efficient and proper way." *Hoffman-La Roche,* 493 U.S. at 170-71. Here, Plaintiff has demonstrated through copious and competent evidence that the "orderly, sensible…. efficient and proper way" to address the similar claims of the similarly situated Vessel Inspectors is through an FLSA collective action.

WHEREFORE, Plaintiff respectfully requests that this Court grant Plaintiff's request for Court authorization to provide: (1) Defendant produce to Plaintiff a list of all similarly situated hourly paid Vessel Inspectors within the last three years[2], (2) the proposed "Notification" letter, attached as **Exhibit "B"**, to be sent to all similarly situated employees nationwide; and (3) the proposed "Notice of Consent to Join" form, attached as **Exhibit "C",** which similarly situated employees can complete, sign, and file with the Court.

Dated this 25th  day of  March, 2015.

Respectfully submitted,

**/s/ ANDREW R. FRISCH**
Andrew R. Frisch
FL Bar No.: 27777
MORGAN & MORGAN, P.A.
600 N. Pine Island, Suite 400
Plantation, FL 33324
Tel: 866-344-9243
Fax: 954-333-3515
E-mail: AFrisch@forthepeople.com

---

*Employment Practices Litigation (No. III)*, 2013 WL 2180014, at *3 (S.D. Tex. May 17, 2013) (approving request for social security numbers to locate class members' whose notices were returned as undeliverable).

[2] Where a plaintiff alleges a willful FLSA violation, notice is proper for potential class members employed by the defendant within the full three-year period; FLSA plaintiffs are not required to prove willfulness without the benefit of discovery. *Lopez v. Sam Kane Beef Processors, Inc.*, No. CC-07-335, 2008 WL 565115, at *2 (S.D. Tex. Feb. 29, 2008); *Foraker*, 2006 WL 2585047 at *5; *Villatoro v. Kim Son Restaurant, L.P.,* 286 F.Supp.2d 807, 811 (S.D.Tex.2003).

Virginia L. LoCoco, Bar #18307
Joseph A. LoCoco, Bar #17305
LoCoco and LoCoco, P.A.
Post Office Box 6014
10243 Central Avenue
D'Iberville, MS 39540
Tel. (228) 392-3799
Fax (228) 392-3890
E-mail: virginia.lococo@lococolaw.com
E-mail: joseph.lococo@lococolaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing has been served on all counsel of record using the CM/ECF system which I understand will send a notice of electronic filing, on this 25th day of March, 2015.

/s/ ANDREW R. FRISCH
Andrew R. Frisch, Esquire